UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 07-281 (RMU) |
| | : | |
| v. | : | **FILED** |
| | : | NOV 1 5 2007 |
| TIMOTHY T. STEWART, | : | NANCY MAYER WHITTINGTON, CLERK |
| Defendant. | : | U.S. DISTRICT COURT |

## GOVERNMENT'S PROFFER OF EVIDENCE

If this case were to go to trial, the government's evidence would show beyond a reasonable doubt that:

1. On June 13, 2007, the a confidential informant "CI," working under the direction of MPD Investigator Kevin Copeland, made a recorded telephone call to the defendant, Timothy T. Stewart, to set up a narcotics transaction where the CI would buy from the defendant 31 grams of cocaine base, also known as crack cocaine. The defendant told the CI that he was at D.C. Superior Court and that he would be available shortly to do the deal. The CI called again and the defendant agreed to meed the CI in an agreed upon area in short order. The CI was then outfitted in the video equipped car, given $1100 in MPD funds and sent to conduct the deal with the defendant. The CI picked up the defendant in the 4400 block of Ponds Street NE in Washington, DC, and, at the defendants direction, drove to Minnesota Avenue and Nelson Place SE, Washington DC. When the CI arrived at Minnesota and Nelson Place, the defendant directed the CI to the 2900 block of Nelson Place SE. The CI handed the money to the defendant, who got out of the CI's vehicle and walked into 2921 Nelson Place SE. The defendant returned a short time later and exchanged approximately 31 grams of crack cocaine with the CI in exchange for $1100. The DEA later determined that the substance was in fact crack cocaine, weighing 30 grams.

2. On June 21, 2007, the CI made another phone call to the defendant to set up a second deal for that day for 31 grams of crack cocaine for $1100. As on June 13, the defendant told the CI that he was at D.C. Superior Court reporting to his PSA agent. The defendant told the CI that "his man" was with him, and that they could meet at Ponds Street at 6:00 pm. The CI met the defendant in the 4400 block of Ponds Street NE, Washington, DC. The defendant was with another person. Based on the defendant's phone conversations with the CI, the government believes that this individual was the defendant's supplier. The defendant got into the CI's vehicle and handed to the CI an amount of crack cocaine in exchange for the money that had provided by MPD. The DEA later determined the substance given by the defendant to be 29.1 grams of crack cocaine.

3.  On July 25, 2007, the CI placed a phone call to the defendant and set up a buy for that day for "two," that is two 31's of crack cocaine for $2200. This time, the CI was accompanied by an undercover officer "UC." The UC and the CI drove to the 4400 block of Ponds Street NE, Washington, DC, where they saw the defendant already there, sitting in the passenger seat of a waiting Chevy Corsica being driven by a black woman. The defendant told the UC and the CI to follow them, and then drove to the intersection of Minnesota Avenue and Nelson Place SE. When all had arrived, the defendant got out of the Corsica, walked to the UC vehicle and got in. The defendant directed the UC to drive into the 2900 block of Nelson Place. As they did this, the defendant called on his cell phone and informed the hearer that he was right around the corner. The UC handed the defendant the $2200. The defendant got out and walked into 2921 Nelson Place. Approximately ten minutes later, the defendant walked out of 2921, returned to the UC vehicle, and from the driver's window, handed 2 zips of crack cocaine to the UC. The defendant then returned to the waiting Corsica and drove off. The substance handed by the defendant to the UC was later determined by the DEA to be 59.6 grams of cocaine base.

4.  On September 19, 2007, the CI made calls to the defendant to set up a deal for that day with the undercover officer. Unprompted by the CI, the defendant asked the CI what he wanted, and suggested "two times?" that is, two 31's of crack cocaine. The CI gave the defendant the undercover officer's telephone number and the defendant agreed to have direct telephone contact with the UC. The UC called the defendant and they agreed to meet later that day at Hechinger Mall in the 1500 block of Benning Road NE, Washington, DC. The UC arrived at Hechinger Mall and parked in front of th Subway sandwich shop. As the UC pulled into the lot, he saw the defendant sitting in the front passenger seat of a black Mazda with Maryland tags, that was being driven by another black man, and had a third passenger in the rear seat, also a black man.

   Afer the UC parked in front of Subway, the defendant called him and voiced suspicion that he was being followed and asked the UC to meet him not in front of Subway, but rather in front of Modell's sporting goods shop. The UC agreed and moved, parking in front of that store. The defendant then get out of that Mazda, walk to the UC's truck and got in. The defendant sat in the front passenger seat, reached into his front pants pocket and retrieve two bags which he handed to the UC. In exchange, the UC handed the defendant $2200 in cash in a plastic bag. The defendant got out of the UC's truck and walked into the Radio Shack store. The defendant walked out of the store, and an arrest team attempted to stop him. The defendant ran and threw down the bag of MPD money used to conduct the transaction. The defendant was stopped and the money was recovered. The substance handed by the defendant to the UC was later determined by the DEA to be 61.5 grams of crack cocaine.

In addition to the foregoing facts outlining the relevant conduct to which the defendant is admitting his responsibility, the defendant also agrees under oath to the truthfulness of the following facts:

5. On May 1, 2007 at approximately 2:00 a.m., the defendant, Timothy Stewart, was driving a 1998 black Chrysler Sebring, bearing DC tags CU-3394, in the 1400 block of First Street SW, in Washington, DC. With the defendant in that vehicle, in the front passenger seat, was James Hester.

Officers of the Metropolitan Police Department attempted to conduct a traffic stop on the vehicle being driven by the defendant for failure to use hand or mechanical signals. The defendant first pulled the vehicle to the curb then sped off. The defendant lost control of the vehicle, which jumped the curb, struck a tree and blew one of its tires. The defendant then attempted to drive the vehicle northbound on First Street SW. The defendant was followed by police for several blocks until the defendant lost control and struck a vehicle parked in the 900 block of New Jersey Avenue SE.

Both the defendant, the driver, and James Hester, the front seat passenger, bailed out of the vehicle and attempted to flee on foot. The defendant was apprehended and subdued a short distance from the vehicle and James Hester was apprehended a half block away from the vehicle. Both the defendant and Hester were seen exiting the vehicle and officers never lost sight of either.

Investigation later revealed that the Sebring was registered to the defendant and his wife. Recovered from the front passenger floorboard was a Ruger P95dc 9mm semiautomatic pistol with serial number 313-87313. The pistol was loaded with 13 rounds of ammunition. The pistol was later test fired and found to be operable. Also found in the center console of the Sebring was a clear ziplock bag of what appeared to be marihuana. The substance later field tested positive for THC. Seized from the person of James Hester was $1195 in U.S. Currency.

Records checks later revealed that neither the defendant, Timothy Stewart, nor James Hester hold a license to carry a firearm in the District of Columbia, nor do either have a valid registration for the pistol that was recovered.

The foregoing proffer of evidence is not intended to be an exhaustive statement of all facts known by the defendant relating to each incident or as to other matters relevant to the above-described events. The foregoing proffer of evidence is only a limited statement of facts necessary to support the defendant's plea of guilty. With respect to the proffer of facts relating to the events of May 1, 2007, intended to provide an insulating statement in the case of <u>United States v. James Hester</u>, in the District of Columbia Superior Court, Case Number 2007-CF2-9912.

        JEFFREY A. TAYLOR
        United States Attorney
        D.C. Bar No. 489-610

BY: _____
        EDWARD A. O'CONNELL
        Assistant United States Attorney
        D.C. Bar No. 460-233
        Organized Crime and Narcotics Trafficking Section
        555 Fourth Street NW, Room 4122
        Washington, DC 20530
        (202) 514-6997

## DEFENDANT'S ACCEPTANCE

I have read the Government's Proffer of Evidence setting forth the facts as to my distribution of fifty grams or more of cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(A)(iii). I have discussed this proffer fully with my attorney, Gary M. Sidell, Esq. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 11-15-07

TIMOTHY T. STEWART
Defendant


## ATTORNEY'S ACKNOWLEDGMENT

I have read the government's proffer of evidence as to my client's distribution of fifty grams or more of cocaine base. I have reviewed the entire proffer with my client and have discussed it with him fully. I acknowledge my client's agreement with and acceptance of this proffer.

Date: 11-15-07

GARY M. SIDELL
Counsel for Defendant Timothy T. Stewart